IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 10-09-H-CCL |
| | CV 11-69-H-CCL |
| Plaintiff, | |
| -v- | ORDER |
| WILLIAM M. LAPP, | |
| Defendant. | |

*******

Before the Court is Defendant William Lapp's Motion to Vacate, Set Aside, or Correct Conviction and Sentence Pursuant to 28 U.S.C. § 2255.

**Section 2255 Standard**

A prisoner is entitled to relief under 28 U.S.C. § 2255 "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has

been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack. . . ." 28 U.S.C. § 2255. However, it is the prisoner's burden to establish his claims, and the prisoner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Where the prisoner has failed to raise his claims on direct appeal, he must also demonstrate that (1) good cause exists for his failure to raise his arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent. *Id.* Defendant Lapp makes no claim that he is actually innocent. Normally a procedural default is addressed first, but when resolution on the merits is easily accomplished, it is permitted. *Lambrix v. Singletary*, 520 U.S. 518, 117 S.Ct. 1517, 1523, 137 L.Ed.2d 771 (1997).

This motion is subject to preliminary review to determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. When this

standard is met, neither hearing nor government response is necessary. *Marrow v. United States*, 772 F.2d 525, 526 (9th Cir. 1985).

**Factual Background**

Lapp specialized in closing-time robberies in small Montana casinos, apparently in order to take advantage of the lone female attendant working in those casinos at closing time. Just prior to two of the robberies, Lapp presented his driver's license to the attendant in order to purchase alcohol. Three of the attendants positively identified Lapp from a photo lineup. All four attendants saw Lapp's .357 Ruger revolver. One attendant specifically asked Defendant Lapp not to kill her. Defendant Lapp told another attendant that he did not want to hurt her, but he would if he had to. At the conclusion of the first robbery, Lapp forced the lone attendant out into the alley behind the casino, and he followed her out, so the attendant was afraid Lapp was going to shoot her. At the conclusion of the other three robberies, Lapp forced the lone attendant into a bathroom and told each one to count to 100 before coming out. All four attendants were put in fear of their lives.

The first robbery was on July 29, 2009, at the First Avenue Casino, in Kalispell, Montana. Lapp pointed a large-caliber, silver revolver at the lone attendant, who gave Lapp $1,700. (Doc. 13 at 4, ¶ 2.) The second robbery was on August 3, 2009, at the River City Casino in Great Falls, Montana. Lapp showed his identification to the attendant when he ordered a beer. Lapp laid his handgun on the bar. Lapp demanded the money in the till, and the attendant gave him $5,700. (Doc. 13 at 5-6, ¶ 3.) The third robbery was on September 26, 2009, at the Chances R Casino in Butte, Montana. Lapp entered the casino just as it was closing, pointed his handgun at the female attendant, and received $3,000. (Doc. 13 at 7-8, ¶ 4.) The fourth robbery was on October 24, 2009, at the Bull's Eye Casino in Helena, Montana. The attendant asked Lapp for identification, and Lapp showed her his Montana driver's license. The attendant remembered that the name on the driver's license was Lapp or Ladd. Lapp showed the attendant the gun in his waistband, and she gave him $6,000. (Doc. 13 at 8-10, ¶ 5.)

When Lapp's residence was searched by his state probation officer, the cash box from the Helena casino was found, including a check payable to the Helena

casino. Lapp's .357 Ruger revolver, which was loaded with six rounds of ammunition, was also found during the search, in addition to receipts from the casinos for beer or liquor. (Doc. 13 at 10.)

Lapp fully admitted and affirmed the government's recitation of facts from its Offer of Proof during the change-of-plea ("COP") hearing (which the Court has summarized above).[1] There can no doubt that Lapp actually committed the crimes of conviction and was properly sentenced therefor.

**Defendant's Plea and Sentencing**

Defendant Lapp was sentenced to 40 years of imprisonment for committing four separate armed robberies of four Montana casinos. Defendant Lapp pleaded guilty to six counts of a ten-count Indictment. Four of those counts (Counts 1, 3, 5, and 7) charged Lapp with "Robbery Affecting Commerce," in violation of 18 U.S.C. § 1951. Two of those counts (Counts 2 and 4) charged Lapp with "Use of a Firearm During a Crime of Violence," in violation of 18 U.S.C. § 924(c)(1)(A)

---

[1] Because Lapp did not appeal his conviction and sentence, no certified transcript has been prepared and filed by the court reporter. The Court relies herein upon its own detailed notes from the hearing. *See Shah v. United States*, 878 F.2d 1156 (9th Cir. 1989) (decision not to hold section 2255 evidentiary hearing based on judge's own recollections of the proceedings).

(ii). The four counts that were dismissed were two additional firearm counts, a felon-in-possession count, and a count charging possession of a stolen firearm.[2] Had Defendant pleaded guilty to all four firearms counts instead of only two, his mandatory minimum sentence would have been 82 years, to be served consecutively to the terms of imprisonment imposed as to the four robbery counts. In summary, Lapp pleaded guilty to each of the four casino robberies and to only two out of the four gun charges arising from those robberies.

The mandatory minimum sentence applicable to the two firearms counts (Counts 2 and 4) was a term of thirty-two years (seven years as to Count 2, followed by 25 years as to Count 4), to be served consecutively to the term of imprisonment imposed as to the robbery counts.[3] During the COP hearing, the

---

[2] The dismissed counts are as follows: Counts 6 and 8 charged "Use of a Firearm During a Crime of Violence," in violation of 18 U.S.C. § 924(c)(1)(A)(ii), for two of the casino robberies; Count 9 charged "Felon-in-Possession," in violation of 18 U.S.C. § 922(g)(1); and Count 10 charged "Possession of Stolen Firearm," in violation of 18 U.S.C. § 922(j).

[3] The first firearm conviction (Count 2) carried a 7 year term because it was a brandishing offense. 18 U.S.C. § 924(c)(1)(A)(ii). As to Count 4, however, section 924(c)(1)© provides that "[i]n the case of a second or subsequent conviction under this subsection, the person shall--(i) be sentenced to a term of imprisonment of not less than 25 years. . . ." In addition, pursuant to section

6

Court specifically noted that the thirty-two year mandatory minimum applied only to Counts 2 and 4.

At the time of the COP hearing, the Court engaged Lapp in a proper Rule 11 colloquy, informing Lapp (as did the written Plea Agreement) that a guideline range would be calculated prior to sentencing using the advisory United States Sentencing Guidelines. The Court inquired whether the proffered pleas were motivated by any threats or direct or implied promises or improper influences, and Lapp responded that there were no such threats or promises. The Court inquired whether Lapp had reviewed his Plea Agreement with his attorney and had an opportunity to question his attorney about the agreement and his rights. The Court verified that there were no secret agreements with the government affecting the leniency of the sentence that were not disclosed to the Court. Lapp answered in the affirmative on all points and also stated that he was satisfied with his

---

924(c)(1)(D), "[n]otwithstanding any other provision of law-- (ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence . . . during which the firearm was used, carried, or possessed." Thus, with four counts of using a firearm in four separate crimes of violence, Defendant was faced with a total mandatory minimum of 82 years, *in addition* to the sentence imposed for the robbery counts.

attorney's representation.  The Court concluded that Lapp's guilty pleas were voluntary and were entered knowingly and intelligently.  *See Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).  All these statements and affirmations made by Defendant Lapp on the record during plea colloquy provide strong evidence that his plea was voluntary, knowing, and intelligent, and such solemn declarations in open court "carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).

Defendant Lapp now asserts that his counsel provided ineffective assistance of counsel by predicting that Lapp would receive a 32 year sentence.  Lapp argues that he should be permitted to withdraw his guilty plea, that his sentence should be vacated, and that the Court should appoint new counsel.  (Doc. 25-1 at 3.)

*Strickland v. Washington*, 466 U.S. 668 (1984), sets the standard with respect to claims alleging ineffective assistance of counsel.  First, petitioner must show that counsel's performance fell below an objective standard of reasonableness.  *Id.* at 687-88.  Second, petitioner must show "a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim. . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

    Lapp explains that prior to his signing of a plea agreement, defense counsel informed him (correctly) that he was facing a mandatory minimum sentence of 82 years on the four gun charges (Counts 2, 4, 6, and 8). Counsel advised Lapp not to go to trial because he would likely be convicted on the government's evidence. Defense counsel informed Lapp that the best plea bargain that could be obtained from the prosecutor would reduce the mandatory minimum sentence from 82 years to 32 years (by dismissing Counts 6 and 8). Defense counsel allegedly told Lapp that the Court would likely run the sentence for the four robberies (Counts 1, 3, 5, 7) concurrent to the 32 year mandatory minimum. Lapp asserts that, based upon this latter prediction, he decided to accept the plea bargain and plead guilty to the

four robbery counts and the two gun charges. Lapp contends that his counsel rendered ineffective assistance of counsel by predicting, incorrectly, that his sentence would be 32 years, by telling him that the sentences on the robbery counts would likely be served concurrently, and by failing to tell him that the sentences on the robbery counts were required to be served consecutively.

However, the record demonstrates that Lapp was properly informed of the potential penalties prior to entry of his guilty pleas. During the COP hearing, I stressed that the mandatory minimum sentence would be imposed *consecutively* to whatever sentence might be imposed as to the other four robbery counts. My detailed hearing notes show that I explained the penalties to Defendant Lapp as follows:

> [t]he government is recommending the 32 year mandatory minimum sentence in the case. As I look at the statute here, the first violation (that is Count 2) for use of the firearm requires a mandatory minimum of not less than 7 years, and the second violation (which is Count 4) requires a mandatory minimum sentence of 25 years. And I take it that is the 32 years that the government is recommending--and, apparently, which is not objected to by you [Defendant Lapp]. However, the rest of the statute, as I read it, seems to indicate that concurrent sentences may *not* be imposed as to the other counts. In

other words, all these counts, whatever the sentence is, should be
consecutive as to the count for the use of the gun, that is Counts 2 and
4, so that the recommendation of 32 years incarceration is applicable
only to those counts. And, in light of what I've just explained to you,
so that [32 years] is not the total sentence that is being recommended,
if I understand it correctly. I want counsel to comment on this so we
have no misunderstanding."

In reply, the prosecutor said,

That is correct. That is why the government's recommendation is 32
years for Counts 2 and 4. And both parties have the right to reserve
recommendation as to Counts 1, 3, 5, 7 (the robbery counts)."

To make doubly sure that Defendant Lapp understood this very important point, I summarized the foregoing discussion for the Defendant by stating,

"[a]nd I take it that you both understand that the sentences that you
are recommending in those other counts are going to be consecutive,
not concurrent to the other sentences? . . . By statute, the Count 2 and
4 sentences must be consecutive to the other counts. Mr. Lapp, you
do understand that, do you not?"

Defendant Lapp responded, "Yes, I do, your honor."

Lapp's assertion in his section 2255 motion that he had no knowledge that a separate sentence for the four robbery counts would be served consecutively to the thirty-two year mandatory minimum is plainly incorrect in view of the record in

this case. *See United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005) ("Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradicts the sworn statements.").

In addition, defense counsel did argue--vigorously, both orally and in writing--that the Court should depart downward to zero months of custody from the 84-105 month sentencing guideline range as to Counts 1, 3, 5, and 7. (Doc. 18 at 6-11.) Although he was not successful in that argument, defense counsel did argue, successfully, that the Court should grant Defendant Lapp a reduction in offense level for acceptance-of-responsibility (despite Defendant Lapp having obstructed justice prior to sentencing).[4] Thus, defense counsel did effect a sixteen-

---

[4] Defendant's guideline range as to the robbery counts (Counts 1, 3, 5, 7) was 110-137 months. After the Court sustained defense counsel's objection (thereby granting a reduction for acceptance of responsibility), Defendant's guideline range was reduced to 84-105 months. The final sentence as to each

month reduction in Lapp's total sentence. This is a slight reduction in light of the 40 year sentence, but it was a grant of leniency that surely would not have been extended without the advocacy of defense counsel.

Besides clarifying the consecutive nature of the sentences for the robbery counts, the Court also made it clear to the Defendant during the plea colloquy that the Court would not be bound by the recommendations of the government. *See Doganiere v. United States*, 914 F.2d 165 (9th Cir. 1990) (no prejudice from attorney's sentencing prediction because court explained to defendant before entry of plea that sentencing discretion would remain entirely with the court). The Court could have departed downward from the guideline range on the robbery counts as was requested by defense counsel, but the Court did not think that such a departure was warranted on the facts of the case, as I will explain further below.

Defendant has not formally attempted to attack his guilty plea, and indeed he appears only to demand a sentence equal to the mandatory minimum. Viewing

---

robbery count was 96 months, all four counts to be served concurrently with one another.

the petition overall, however, it contains at least an implied challenge to the guilty plea, and therefore the Court addresses that challenge, as follows.

In order to attack his guilty plea, Defendant must show "(1) his 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56-57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Defendant Lapp does not attempt to meet this standard because he fails to claim that he would have gone to trial but for his counsel's alleged errors. The Court finds on the record of this case, and especially in light of the overwhelming evidence against the Defendant, *see Premo v. Moore*, ___ U.S. ___, 131 S.Ct. 733, 744, 178 L.Ed.2d 649 (2011), that no reasonable probability exists that had defense counsel been more clear Defendant would not have pleaded guilty but would have gone to trial, only to face the certainty of an even greater penalty--the 82-year mandatory minimum sentence.

At age 37 at the time of sentencing, Lapp reasonably believed that an 82-

year sentence would amount to a sentence of life imprisonment. (Doc. 25-1 at 1.) The 82-year mandatory minimum sentence was not merely a risk attendant to the jury trial. On the evidence described above (and all other evidence possessed by the government), the 82-year mandatory minimum sentence was a certainty. This Court concludes that no rational defendant would choose a jury trial resulting in an 82-year sentence when he had a plea bargain that offered him the possibility of half that sentence. And while defense counsel's prediction of a 32-year sentence was probably overly-optimistic (even before Lapp's escape attempts came to light), the guilty pleas defense counsel advised were *without doubt* Lapp's only course of action to avoid a life sentence.

As stated above, defense counsel did request that the Court depart downward on the robbery counts to a sentence of zero months. (Doc. at 6-11.) This Court interpreted defense counsel's request to encompass, at minimum, a low sentence on each of the robbery counts, substantially below the guideline range of 110 to 137 months (or, after reduction for acceptance, even substantially below the final guideline range of 84-105 months). The Court conceivably could have

granted defense counsel's request for downward departure to a below-guideline range sentence on the robbery counts, because the Court did have some sympathy for the Defendant in light of his positive aspects and the effect on him of the tragic loss of his wife. (Doc. 18 at 7-8.) However, the four casino robberies were egregious crimes of violence, and the Court's leniency was entirely depleted in granting Lapp the acceptance-of-responsibility reduction.

In essence, the Court overlooked Lapp's several escape attempts in order both to reduce his sentence via an acceptance of responsibility reduction and also to run his sentence concurrently with his state court sentence.[5] Although defense counsel made every effort to obtain the hoped-for 32-year sentence, he could not overcome the sentencing factors arising from Lapp's egregious crimes, from Lapp's criminal record, and particularly from the fact that Lapp planned several

---

[5] PSR, ¶¶ 6-11. Defendant Lapp attempted to escape while detained in three different custodial facilities prior to sentencing. During the last escape attempt, Defendant Lapp attempted to recruit other individuals to assist him by promising a $10,000 cash payment and describing a plan for additional robberies in Montana prior to fleeing the state.

escapes while awaiting sentencing. Not unreasonably, this Court assigned a high priority to public safety, especially after it was discovered that prior to the sentencing hearing Lapp was actually planning to escape custody and commit more armed robberies. Under these circumstances, Lapp's expectation that he would receive the mandatory minimum sentence and a zero term of imprisonment for the four robbery counts was simply unrealistic.

Finally, even an erroneous sentencing prediction is not ineffective assistance of counsel when this Court cleared up the misunderstanding prior to entry of the guilty pleas. *See Sexton v. Cozner*, 679 F.3d 1150, 1156-57 (9th Cir. 2012); *Womack v. Del Papa*, 497 F.3d 998, 1003-04 (9th Cir. 207); *see also Sophanthavona v. Palmateer*, 378 F.3d 859, 868 (9th Cir. 2004) (ineffective assistance claim based on inaccurate sentence prediction requires proof of gross mischaracterization *and* erroneous advice on probable effects of going to trial). In this case, defense counsel quite properly warned Lapp that his sentence would effectively double if he did not take the plea agreement offered to him by the government. Under all the facts and circumstances alleged by Lapp in his section

2255 motion, and the entire record of this case, defense counsel did not render ineffective assistance of counsel.

**Conclusion**

Thus, having considered the Defendant's Motion, the Court's file, and all the record of this case, the Court concludes that the Defendant is not entitled to relief. Defendant has failed to show that his sentence would have been different absent the alleged ineffective assistance. Neither has Defendant Lapp attempted to assert that he would not have pleaded guilty had he been more properly informed of the content and meaning of his Plea Agreement with the government, nor could he do so because this Court carefully informed Defendant of all of the penalties he faced and inquired of his understanding of his Plea Agreement, thereby ensuring that his decision to plead guilty was voluntary, knowing, and intelligent.

Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion Pursuant to 28 U.S.C. § 2255 (Doc. 25) is DENIED. Let judgment enter.

IT IS FURTHER ORDERED that Defendant's Motion for sentencing

transcript (Doc. 28) is DENIED as moot.

Finding that the Defendant has failed to make a substantial showing of the denial of a constitutional right and that no jurist of reason would debate the correctness of denying Defendant collateral relief,

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

The Clerk is directed forthwith to notify Defendant Lapp of the entry of this order.

Done and Dated this 1st day of November, 2013.

/s/ Charles C. Lovell
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE